*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. P. KNIGHT, Minor.

UNPUBLISHED
September 14, 2023

No. 364588
Oakland Circuit Court
Family Division
LC No. 18-869253-NA

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's order terminating her parental rights to NK, her minor child, after respondent pleaded no contest to various statutory grounds for termination. On appeal, respondent contends that the trial court clearly erred in terminating her parental rights because it was not in NK's best interests to do so. We affirm.

## I. BACKGROUND

In December 2018, respondent's serious substance abuse, particularly with cocaine, along with mental-health concerns arising from respondent's erratic behavior led to NK being removed mere months after she was born.[2] Notably, NK tested positive for cocaine at birth. Respondent soon pleaded no contest to allegations in a temporary custody petition, and the court took jurisdiction over NK. The court ordered respondent to comply with and benefit from her parent-agency agreement, including attending parenting time, maintaining suitable housing, and participating in a psychological evaluation, mental health counseling, substance abuse treatment, and parental education services.

---

[1] The child's putative father was never named as a respondent below; therefore, we use respondent to refer to respondent-mother.

[2] Respondent had two older children, who were placed in guardianships with their grandmothers.

-1-

Although respondent had suitable housing and income,[3] attended and generally acted appropriately during visits, completed parenting classes, and was strongly bonded with NK, she continued to struggle with substance abuse. Specifically, respondent missed numerous drug screens and repeatedly tested positive for cocaine and marijuana as well as other substances.[4] In December 2019, the court amended the permanency plan to allow discretion for unsupervised visits. Respondent, however, committed retail fraud the month prior and had to serve a 60-day jail sentence beginning in February 2020.

In May 2020, petitioner filed a supplemental petition to terminate respondent's parental rights to NK. Petitioner subsequently withdrew its petition after the parties agreed to pursue a juvenile guardianship for NK with her maternal grandmother. NK was briefly placed in her grandmother's care before being removed due to several Children's Protective Services' complaints, housing concerns, and NK's grandmother possibly allowing respondent unsupervised visitation with NK. Thereafter, the trial court determined that a guardianship with NK's grandmother was not in NK's best interests, and, in August 2021, the court changed NK's permanency plan to reunification with respondent. In early February 2022, respondent again entered an inpatient substance abuse treatment program, but relapsed after two weeks.

In March 2022, the court changed NK's permanency plan to adoption. The court determined that DHHS should initiate proceedings to terminate respondent's rights because NK had been in placement for over two years and respondent had not remedied the issues that led the court to assume jurisdiction over the child.

Respondent continued to intermittently test positive for cocaine and marijuana, began showing some mildly concerning behavior during visits, and did not follow her prescription medication regimen. Respondent also failed to pay child support for her two older children, resulting in bench warrants being issued for her arrest. In June 2022, respondent was arrested on her outstanding warrants and further charged with providing false information to the police as well as driving without a valid license, registration, or proof of insurance.

Shortly after respondent's arrest, petitioner filed a supplemental petition to terminate respondent's parental rights to NK. Petitioner sought termination under MCL 712A.19b(3)(c)(i) (conditions leading to adjudication continue to exist), (g) (failure to provide proper custody or care), and (j) (risk of harm if child is returned to parent's home). Respondent pleaded no contest to the statutory grounds for termination as alleged in the supplemental petition[5] and the court

---

[3] Respondent received Supplemental Security Income benefits due to her emotional impairment.

[4] After the accuracy of the initial service provider's results was questioned, Forensic Fluids assumed responsibility for analyzing respondent's drug screens.

[5] The foster care worker later testified that: (1) respondent had two older children in care with their grandmothers, (2) NK was removed from respondent's care in December 2018 due to respondent's cocaine use and her unaddressed mental health issues, (3) following a dispositional hearing in January 2019, the court ordered respondent to comply with a parent-agency treatment plan, (4) in the worker's view, respondent failed to benefit from her court-ordered services, (5) respondent had

ordered respondent to attend a psychological evaluation. Before the best-interests hearing, respondent was arrested for felonious assault and fleeing, obstructing, and/or resisting police. During the hearing, respondent was in jail and expected to remain incarcerated until early 2023 and serve a probationary term thereafter. Respondent's most recent positive drug test for cocaine was at the end of October 2022.[6]

The court-ordered psychological evaluation recognized that respondent had been compliant with aspects of her parent-agency agreement; however, she failed to abstain from substance abuse and failed to consistently participate in mental-health treatment services. Respondent's poor impulse control was evidenced by her continued drug use and criminal behaviors. Given NK's need for permanency and stability, a clinician opined that termination should be considered because respondent had nearly four years to address her barriers to reunification and nevertheless failed to prioritize NK's needs over her own.

After testimony from the worker and respondent at the best-interests hearing, the court concluded that termination of respondent's parental rights was in NK's best interests and it entered an order terminating respondent's parental rights. This appeal followed.

## II. STANDARD OF REVIEW

Whether termination of parental rights is in a child's best interests must be established by a preponderance of the evidence. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The trial court's findings and ruling that termination is in the child's best interests are reviewed for clear error. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed." *Id*. (citation and quotation marks omitted; omission in original). Furthermore, "regard [must] be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (citation and quotation marks omitted).

---

a lengthy history of substance abuse, (6) she missed 7 of 59 drug screens with Forensic Fluids and tested positive 12 times for cocaine, marijuana, or fentanyl, (7) respondent's psychological assessment reflected that she was bipolar and had stimulant use disorder, raising concerns about her ability to be an effective parent, (8) respondent also lacked impulse control, (9) respondent had numerous arrests, (10) respondent missed 54 of 315 scheduled visitations and either left early or arrived late 16 times, (11) respondent was placed in and removed from a substance abuse program in 2019, (12) in the last three months, respondent failed to attend 5 out of 11 therapy sessions, and respondent had not scheduled a visit with her psychiatrist since August 2021, (13) in the worker's view, there was a reasonable likelihood that NK would be harmed if returned to respondent and there was no reasonable likelihood that respondent would benefit from services or provide a proper home or support for NK within a reasonable time after having almost four years to do so. After hearing the testimony, the court determined that petitioner established all three statutory grounds.

[6] Respondent questioned the validity of this test, claiming that she had obtained an independent test at a hospital that was negative. Respondent provided no documentation to support her testimony and the court later concluded that she had tested positive for cocaine.

III. ANALYSIS

Respondent argues that the trial court clearly erred in terminating her parental rights because it was not in NK's best interests to do so. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "The trial court should weigh all the evidence available to determine the child[]'s best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The court's focus must be on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Among the factors for the trial court to consider are "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with . . . her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

When making its best-interests determination, the trial court may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *Moss*, 301 Mich App at 83. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

In this case, the court recognized that respondent was bonded with NK; however, their bond was diminished during respondent's repeated incarcerations. And, citing respondent's continued drug use and poor impulse control, the court determined that respondent's parenting ability was "extremely low." Addressing respondent's poor impulse control, the court discussed respondent's repeated incarcerations, her admission to driving without a license, and her prior relationship with a boyfriend, who was incarcerated for drug trafficking, had a prior parental termination of his parental rights, and was involved in a domestically-violent dispute with respondent.

The court recognized that respondent was partially compliant with her parent-agency agreement. It specifically acknowledged that respondent had stable housing throughout the case, participated in visitation "for the most part," and engaged appropriately during her visits. But the court also noted times when respondent missed visits without adequate justification. And the court found that respondent did not benefit from substance abuse treatment given that she used cocaine in October 2022.

The court further found that NK's foster parents provided a stable, loving environment for NK and met her needs. Given the length of time the case was pending, the court prioritized NK's need for permanence. Although some delays were outside of the parties' and the court's control, the court explained that respondent had four years to comply with, and benefit from, services. Despite the opportunities and services afforded to respondent over that time, respondent's drug

-4-

use and mental-health issues remained significant barriers to reunification. Accordingly, the court concluded that it was in NK's best interests to terminate respondent's parental rights.

On appeal, respondent contends that she made consistent, significant efforts to rectify her barriers to reunification. She always had suitable housing[7] and income. She participated in services, maintained contact with workers, and worked diligently toward reunification. Respondent also participated in hundreds of appropriate visits with NK, and the two were strongly bonded. Despite having some setbacks, respondent argues that she was addressing her mental health, had a plan to achieve reunification after being released from jail, and was committed to bettering herself as a parent. Further, there was no evidence that NK's foster care placement would be disrupted if respondent been given more time to benefit from services and she would have done so. In respondent's view, the trial court's best-interests determination failed to appropriately consider her significant progress, the strong bond she and NK shared, and the psychological impact of termination on NK. For these reasons, respondent contends it was contrary to NK's best interests to terminate her parental rights and the trial court erred by concluding otherwise.

Review of the record refutes respondent's assertions and supports the court's findings. As an initial matter, the court explicitly discussed respondent's housing, respondent's bond with NK, and respondent's visitation record (for the most part) as facts in her favor. The court did not mention respondent's adequate income or her completion of parenting classes. Yet, despite respondent's limited successes in certain aspects of her parent-agency agreement, the evidence showed that respondent never resolved her substance abuse, and therefore, its impact on her ability to parent effectively. Throughout the case, respondent tested positive for cocaine. And even after respondent participated in substance abuse therapy and inpatient treatment twice, respondent used cocaine within months of termination. Further, respondent was incarcerated numerous times for criminal behavior, once in 2020 and twice between June and November 2022. Similar to respondent's continued drug use, she was arrested just before and incarcerated at the time of the best interest hearing.

Moreover, respondent failed to address her mental-health issues as shown by her inconsistent participation in treatment and her poor impulse control, including her criminality throughout the proceedings. The worker testified that respondent's participation in individual therapy lapsed repeatedly with respondent attending about half her appointments during the spring of 2022. Although respondent testified that she took her medications as prescribed, the clinic evaluation showed that respondent reported going without medication multiple times, and for significant periods, from 2020 to 2022. Respondent also exhibited bad judgment by driving while her license was suspended and by her years long involvement with a drug-trafficking boyfriend as she was attempting to achieve sobriety. Respondent further displayed poor judgment by sending money to her boyfriend while he was incarcerated when she failed to adequately support her two older children.

---

[7] At the best-interests hearing, respondent admitted that she was facing eviction, which she avoided because her teenage daughter, who was in a guardianship with her maternal grandmother, paid respondent's outstanding balance from her employment earnings.

And while respondent's visits with NK were appropriate for the most part, respondent appeared to deprioritize them as the case progressed. Specifically, respondent scheduled appointments during visitation despite being told not to do so. Respondent also arrived late and left early at some visits and missed visits, leaving town without notifying the worker. Even when respondent did attend visits, she began intermittently leaving the visitation room for repeated, brief periods.

Although respondent was bonded with NK, she conceded that NK's foster parents were as well. NK's foster parents were willing to adopt her. They met NK's needs and she thrived under their care.

In sum, petitioner offered respondent extensive services and opportunities to fully comply with her parent-agency agreement; however, respondent made no marked improvement on the two significant barriers to reunification, namely her continued drug use and mental-health issues. After almost four years in care, the court concluded that NK's need for permanency, stability, and finality was paramount, and that termination of respondent's parental was in NK's best interest. On this record, the trial court did not clearly err in its factual findings or in its decision that termination was warranted.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel